APR 1 8 2002

Michael N. Milby
Clerk of Court

Friday-March 12, 2002

Señor, Ricardo M. Adobbati.

CAB-01-100

Con todo respeto, today Friday-April 12, 2002, I received your correspondence(s) dated: March 22, 2002; and April 9, 2002. Allow me to thank you for looking into the Rosenburg case. A case I quoted among the "main" objective on my motion to vacate, set aside, or correct sentence. Señor Adobbati, I respectfully request that you sheperdize the following cases I quote, so as to better understand my "Desire" to Appeal the District Court's Decision over my Motion for Relief.

Accept this letter as "Notice that I wish to appeal" the District Court's decision of my Motion for Relief pursuant to 28 U.S.C. Section 2255.

### Prejudice

Furthermore, the reason(s) I Desire to Appeal, are as follow: Unlike deportation proceedings, which are civil in nature, criminal trials are subject to the full panalopy of procedural safeguards. United States v. Barraza-Leon, 5__ F.2d 218, at 220 (1978) (quoting Whetstone v. INS, 501 F.2d 1303, 1306 (9th Cir. 1974)). In the case at hand, the United States Magistrate Judge, ie: John Wm. Black, who precided over the instant 28 U.S.C. Section 2255 Motion for Relief, was the same Magistrate Judge who committed Petitioner to the Attorney General's custody on December 28 1998; and the United States District Judge, ie: Hilda G. Tagle, who precided over the aforesaid Motion, was the same District Judge who precided over Petitioner's trial by jury, and who subsequently sentenced Petitioner to a term of seventy-seven months. For the aforementioned reason, Petitioner has by claims:

1 of 9

Conflict of Interest, and Abuse of Discretion.

## Assistance of Counsel

Nearly one half century ago in Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64-65 (1932), the Supreme Court recognized for the first time that "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." In the years that followed the Court established that no indigent defendant may be imprisoned without first having been provided access to appointed counsel, see, Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792 (1963), and that this right applies not only at the trial stage but on appeal as well. See, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814 (1963). Nor is the right to counsel satisfied by appointment of counsel alone; appointed counsel must advocate his client's cause vigorously and competently. Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400 (1967), emphasized that

> [t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae . . . . [Counsel's] role as advocate requires that he support his client's appeal to the best of his ability.

This obligation of counsel is stated with equal force in ABA Standards, Criminal Appeals Section 3.2 (1970). See also, BRIEF FOR APPELLANT - No. 99-40766, submitted by Attorneys for Appellant - Laura Fletcher Leavitt, and Sandra Zamora-Zayas, on December 15, 1999.

While the government presented Petitioner's 28 U.S.C. Section

2255 Motion for Relief before the Court in the posture of an "actual innocence" claim (see, page 5 of Government's Response to Petitioner's 2255 Motion), it truly presented issues involving statutory construction and procedural rights of defendants which are mandated by the Constitution. See, pages 2 thru 12 of the instant 2255 Motion (exhibits included); see also, Petitioner's Rebuttal To Government's Response.

Moreover, "Ineffective assistance of counsel not only constitutes ground for relief on motion to vacate, set aside, or correct sentence, but it can also constitute for failure to raise an issue on direct appeal. Barnett v. U.S., 870 F. Supp. 1197, at 1202 (S.D.N.Y. 1994). Claims of ineffective assistance of counsel can be raised for the first time on motion to vacate sentence. U.S. v. Span, C.A.9 (Ariz.) 1996, 75 F.3d 1383.

To succeed on ineffective assistance of counsel claim on motion to vacate, defendant must demonstrate that his counsel's performance was so prejudicial that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. U.S. v. Roth, C.A. 10 (Kan.) 1996, 100 F.3d 111. The Due Process Clause of the 14th Amendment prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. United States v. Gaudin, 515 U.S. 506, 510 (1995); Sullivan v. Louisiana, 508 U.S. 275, 278 (1993); In Re Winship, 397 U.S. 358, 362-64 (1970). A "reasonable doubt" has often been described as one "based on reason which arises from the evidence or lack of evidence." Johnson v.

Louisiana, 406 U.S. 356, 360, 92 S.Ct. 1620 (citing cases). See also, Petitioner's Exhibit No. 6, From the instant 2255 Motion, as it relates to: Section 301 (a)(7),(b), of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. Section 1401 (a)(7), (b), and (c).

Ineffective assistance of counsel is cause for procedural default for purposes of motion to vacate. U.S. v. Placente, C.A. 5 (La.) 1996, 81 F.3d 555. To determine whether Petitioner's father, a United States citizen, transmitted U.S. citizenship to him upon his birth, court had to look to applicable law in effect at time of petitioner's birth. See, 240 F.3d 1317, at 1320. "No principle of procedural due process is more clearly established than that Notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, ... are among the constitutional rights of every accused... Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). Denial of this right has been deemed habeas relief in numerous cases. See e.g., Tarpley v. Estelle, 703 F.2d 157 (5th Cir. 1983); Gray v. Raines, 662 F.2d (9th Cir. 1981); Watson v. Jago, 558 F.2d 330 (6th Cir. 1977)." Plunkett v. Estelle, 709 F.2d 1004, 1009-10 (1983).

In reviewing a claim that a jury charge was erroneous, the only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396 (1973). The harmless error review "looks ... to the basis on which 'the jury actually rested its verdict.'" Sullivan v. Louisiana, supra, 508 U.S. 275, id., at 279, 113 S.Ct. 2078 (1993) (quoting Yates v. Evatt, 500 U.S.

391, 404, 114 L.Ed.2d 432, 111 S.Ct. 1884 (1991)). In <u>Jenkins v. United States</u>, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060 (1965), the Supreme Court reversed a federal conviction on the ground that the trial judges charge to the deliberating jury "in its context, and under all the circumstances . . . had [a] coercive effect." "When a jury is not given an opportunity to decide a relevant factual question, it is not sufficient "to urge that the record contains evidence that would support a finding of guilt even under a correct view of the law." United States v. Casale Car Leasing Inc., 2 Cir. 1967, 385 F.2d 707, 712." <u>United States v. McClain</u>, 545 F.2d 988, 1003-1004 (1977). See also, <u>United States v. Amaya</u>, 509 F.2d 8 (1975) (Charge which has effect of coercing a verdict, is incorrectly given, and requires a mistrial). Petitioner's contention therefore, that the conviction was based on the jury's choice between a valid and invalid theory cannot stand. See, <u>Cameron v. Hanck</u>, 383 F.2d 966, 972 (Fifth Cir. 1967); see also, <u>Court's Response To Jury Note No. 1</u>.

Counsel's failure to object to or appeal such an egregious flaw in his trial cannot be considered to be within the "wide range of proffessionally competent assistance." <u>Strickland v. Washington</u>, 104 S.Ct. 2052, at 2066. See also, <u>Criminal Docket For Case #: 99-CR-20-1, page 6, paragraph 37 and 38</u>. This Court should bear in mind that "the ultimate focus of inquiry must be on the [FUNDAMENTAL FAIRNESS] of the proceeding whose result is being challenged." <u>Strickland v. Washington, supra, 466 U.S. 668, 697 (1984)</u>. See also, <u>In Re Winship, 397 U.S. 358, 363 (1970)</u> ("a person accused of a crime . . . would be at a severe disadvantage, a disadvantage ammounting to a

lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.").

### U.S. Nationality

Where father was citizen of United States and resided in United States prior to birth of son in China, son acquired United States nationality at birth, and was entitled to have his nationality confirmed by court decree. Ng Gim Nun v. Dulles, S.D. Ga. 1957, 154 F.Supp. 898.

---

A case that challenges a removal order would go through the administrative process before reaching the courts. Court of Appeals has jurisdiction to review Petitioner's claim that he is a United States national or citizen and thus is not "an alien" subject to removal. Scales v. I.N.S., 232 F.3d 1159, 1161 (9th Cir. 2000). See also, the instant Section 2255 Motion's page 16. In addition, Title 8 U.S.C. Section 1252 (b)(5)(A) requires the court of appeals to decide the issue "[i]f the petitioner claims to be a National of the United States" and the facts - as here - are not in dispute. See also, Briseno v. I.N.S., 192 F.3d 1320, 1323 n.4 (9th Cir. 1999) (acknowledging that a petitioner's status as an alien is a "jurisdictional fact"); Bowrin v. I.N.S., 194 F.3d 483, 486 (4th Cir. 1999) (holding that the court of appeals had jurisdiction to determine the "jurisdictional fact" of whether the petitioner was an alien). If alienage is an element of the crime, then it is an ineluctable conclusion that the government must prove that element beyond a reasonable doubt - due process demands no less. See, Carella v. California, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420 (1989). See also, Court Transcripts, Criminal Action No. B-99-020, Jury Trial - March 14,

1999, page 135 - lines 9 thru 15.

Title 8 U.S.C. Section 1101(a)(3) defines an alien as "any person not a citizen or national of the United States." In turn, 8 U.S.C. Section 1101(a)(22)(A) defines the term "National" as: a citizen of the United States. Citizenship, however, is not the sine qua non of "Nationality." A "National" of the United States may also be "a person who though not a citizen of the United States owes permanent allegiance to the United States." 8 U.S.C. Section 1101(a)(22)(B). Only aliens are removable. 8 U.S.C. Section 1227 (identifying classes of removable aliens). [If] The minimum requirement to qualify for "National" status for purposes of 8 U.S.C. Section 1101(a)(3)'s statutory definition of "alien," the person must at a minimum, demonstrate (1) birth in a United States territory, or (2) an application for United States citizenship." Hughes v. Ashcroft, 255 F.3d 752, 757 (9th Cir. 2001), then the allegiance Petitioner affirmed to the United States, by way of registering, and being accepted by the Selective Service of the U.S. armed forces must pass the minimum requirement.

As noted In Re Siem, D.C. Mont. 1922, 284 F. 868, (in pertinent part): "The distinguishing and supreme obligation of citizenship and its permanent allegiance is military service. .... So the citizen born to or making oath of allegiance likewise renders military service to the country in payment of and in consideration for the advantages, rights, and protection it extends to him. . ... For these reasons, without his country's consent, a person neither can be rightfully compelled to enter the military service of a country wherein he is an alien, nor can he

rightfully voluntarily do so (See, <u>attached exhibits</u>). ... In respect to change of citizenship and allegiance, all leading countries, including this country and Norway, by treaties and statutes now give advance and general consent thereto." The Immigration and Nationality Act plainly defines Naturalization as "the conferring of nationality of a state upon a person after birth by any means whatsoever." <u>8 U.S.C. Section 1101 (23) (1952)</u>.

It should be noted that there is little reason to think that the word "alien" means anything different from what it says. If the statute were meant to apply to those individuals who are not aliens, it could have easily been drafted that way. For example, Congress could have used the more general terminology of "any person" or "whoever." See, e.g., <u>18 U.S.C. Section(s) 207, and Section 471</u>. Its failure to do so emphasizes that alienage itself must be shown. In any event, the statute is so clear in this respect that there seems to be little need to search for legislative history, for if some other construction of the word was buried in that history, use of the construction would surely implicate basic principles of legality. See, e.g., <u>L. Fuller, The Morality of Law, 33-41 (Yale U. Press 1964)</u>. At the very least, the doctrine of lenity should be considered. See, e.g., <u>Bell v. United States, 349 U.S. 81, 83-84 (1955)</u>, and <u>McBoyle v. United States, 283 U.S 25, 27 (1931)</u>. Moreover, in <u>United States v. Bejar-Metracios, 681 F.2d 81, 83 (9th Cir. 1980)</u>, it was indicated that proof of alienage was required in a case such as this.

In addition, a claim of U.S. citizenship presents an exce-

ptional scenario in which courts are required by statute to consider the merits of a nationality claim pursuant to the <u>Immigration and Nationality Act, Section 242(b)(5)</u>, either the district or appellate court will decide the issue, depending on the factual issues involved and the need for a hearing. The Immigration and Nationality Act codifies the principle established in <u>Ng Fung Ho v. White, 259 U.S. 276 (1922)</u>, THAT a person who makes a nonfrivolous claim of U.S. citizenship has a due process right not to be deported without a judicial trial on the citizenship issue. See also, <u>Medina v. I.N.S., 1 F.3d 312 (5th Cir. 1993)</u> (language of then INA Section 242(b)(5) suggested Congress intended to protect the petitioner seeking recognition of his or her citizenship, not the INS). In the past, courts were persuaded to intervene when the circumstances were extreme or when no proceeding had yet started, see, e.g., <u>Perkins v. Elg, 307 U.S. 325 (1939)</u> (considering suit for declaratory judgement of citizenship when threatened deportation proceedings had not been initiated). The District Court could hear the action as though it were brought under the declaratory judgement provisions of <u>28 U.S.C. Section 2201, I.N.A., Section 242(b)(5)(B), 8 U.S.C. Section 1252(b)(5)(B) (1999)</u>.



ARMED FORCES OPPORTUNITIES
P.O Box 2865
Huntington Station, N Y 11746-2102

```
***********************************************************
* You recently registered with the Selective Service.*
* When you did, I wonder if you gave any thought to  *
* the many great opportunities available in today's  *
* Armed Forces.                                      *
***********************************************************
```

Dear Sir:

I'd like to send you the complete facts -- free and without obligation -- to prove just one point:

The opportunities in today's Armed Forces are better than ever.

You owe it to yourself to find out what the Services can offer you. It could make a very big difference in your life.

Send for the full facts now. Learn how you can choose to serve in the Armed Forces on a full-time or a part-time basis. So you can select the type of duty that not only matches your interests, but also fits your plans for the future.

    Find out about:

    Full-Time Active Duty. It could be the opportunity of your life. The Services prepare people for hundreds of different careers. If you qualify, you could be trained in a technical skill that could take you far. You'll be paid more than $590 a month to start. Plus, you'll earn 30 days of vacation with pay each year. On top of that, your food, uniforms, housing, medical and dental care will be provided. There are even financial assistance programs to help you further your education. Send today for all the details.

    Reserves. You can serve your country -- and yourself -- while you live at home. So you can continue to go to school or keep your full-time job. You'll have the chance to learn a new and valuable skill, or utilize special skills you may already have. And you'll be paid while you do it. It's a great opportunity to earn an extra income and make some new friends ... while you earn the respect of the people in your

(over, please)

# SELECTIVE SERVICE SYSTEM

ACKNOWLEDGMENT LETTER

67-1765118-3    10    70325-C70676

RAYMUNDO    GONZALEZ  
BOX 128 #427235  
TENNESSEE COLONY, TX  75861-0128

March 25, 1987

If corrections are necessary mail completed form to:

Selective Service System  
P.O. Box 4636  
North Suburban, IL  60197-4636

Date of birth: 04-08-67

Dear Mr. GONZALEZ,

This is your Registration Acknowledgment Letter, which you should keep as proof of your registration with the Selective Service System. A Change/Correction Form has also been included. Use the form to correct information currently in your Selective Service record.

Federal law requires that until January 1 of the year you reach age 26 you:

1. Notify Selective Service of errors and changes within 10 days of the date of change. Examples are listed below.

   - Errors in your record (such as date of birth).

   - Changes in your current address (the place where you currently live).

   - Changes in your permanent address (a place where you can always be reached; for example, your parents' address).

   - Legal name change.

2. Provide your Social Security Account Number to Selective Service.

Failure to comply with these requirements is a violation of the Military Selective Service Act. The maximum penalty for a violation of this Act is a $250,000 fine or five years in prison or both.

IMPORTANT NOTE:

Federal and State laws require registration-age men applying for some benefits (such as student financial aid, Federal employment, job training, etc.) to be registered with Selective Service. Please keep this letter as legal proof of your registration. Or, you may keep only the wallet size Registration Acknowledgment provided below for your convenience.

For information about your rights and obligations, and the claims and appeals process in effect if inductions are authorized, write to the Consumer Information Center, Department 588R, Pueblo, CO. 81009, for a free copy of "Information for Registrants."

| Registration Acknowledgment | | Selective Service System | | | |
|---|---|---|---|---|---|
| Selective Service Number | Date of Birth | Social Security Number | Phone | Sex | Last Action Date |
| 67-1765118-3 | 04-08-67 | 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 | - - | M | 03-25-37 |
| Name and Current Address | | | Permanent Address | | |
| RAYMUNDO  GONZALEZ<br>BOX 128 #427235<br>TENNESSEE COLONY, TX  75861 | | | BOX 128 #427235<br>TENNESSEE COLONY, TX  75861 | | |
| Wilfred L. Ebel<br>Acting Director  *[signature]* | | | Registrant's Signature  *[signature]* | | SSS Form 3A<br>(MAR 86) |