UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 2 2 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RAYMUNDO GONZALEZ-GARIBAY, | * | C.R. NO.  B-99-020-01 |
| Plaintiff/Petitioner, | * | (PRIMARY APPEAL NO.  99-40766) |
| vs. | * | (.S.D.C. NO.  B-01-CV-100) |
| UNITED STATES OF AMERICA, | * | (C.O.A. APPLICATION NO.  02-40680) |
| Defendant/Respondent. | * | (WRIT OF CERTIORARI NO.  02-11160) |

BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT,

PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 60(b);

AND LEAVE TO FILE AN AMENDED COMPLAINT,

IN ACCORDANCE WITH FEDERAL RULES OF CIVIL PROCEDURE, RULE 15(a). 1/

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now (after diligent research; and attempts to have claim [litigated]), Plaintiff/Petitioner Raymundo Gonzalez-Garibay ("hereinafter Plaintiff"), acting in pro se and moves this Honorable Court and respectfully presents this his Motion for Relief from judgment pursuant to Federal Rules of Civil Procedure ("hereinafter Fed.R.Civ.P.") Rule 60(b); and Fed.R.Civ.P. Rule 15(a). In support thereof, Plaintiff will respectfully show the following:

<u>JURISDICTION</u>

This Court's jurisdiction is invoked under Fed.R.Civ.P. Rule 60(b)(1):  Rule 60(b)(1) states in pertinent part, "The Motion shall be made within a reasonable time, and for reason[] (1), ... not more than one year after the judgment ... was entered or taken." Id; and in accordance with Fed.R.Civ.P. Rule(s) 15(a), and 15-(c)(2).

1. See <u>DOE v. HOWE MILITARY SCHOOL</u>, 227 F.3d 981 (7th Cir. 2000)("alternative motions filed together shall each be named in the caption on the face.") Id., at 989.

ISSUES PRESENTED

FOR REVIEW

1. RELIEF FROM JUDGMENT, PURSUANT TO FED.R.CIV.P.,
   60(b); AND LEAVE TO FILE AMENDED COMPLAINT, PUR-
   SUANT TO FED.R.CIV.P., RULE(S): 15(a); AND    15-
   (c)(2).

2. WHETHER THE GOVERNMENT IS ESTOPPED FROM DENYING
   PLAINTIFF'S CITIZENSHIP UNDER THE FACTS  OF THE
   INSTANT CASE, IN LIGHT OF THE PRINCIPLES HANDED
   DOWN BY THE U.S. SUPREME COURT IN:  MONTANA  V.
   KENNEDY, 366 U.S. 308, 81 S.CT. 1336    (1961);
   AND AS LITIGATED BY THE IMMIGRATION AND NATURAL-
   IZATION SERVICE'S BOARD OF IMMIGRATION APPEALS,
   IN MATTER OF NAVARRETE (1967), 12 I. & N.  DEC.
   138.

3. WHETHER PLAINTIFF WAS DENIED EFFECTIVE ASSISTAN-
   CE OF COUNSEL AT A CRITICAL STAGE OF THE  TRIAL
   PROCEDINGS, NAMELY, A DELIBERATING JURY'S INQUI-
   RY (SUBSTANTIAL QUESTION), AS TO PERTINENT  AND
   EXISTING LAW.

4. WHETHER THE COURT VIOLATED PLAINTIFF'S RIGHT OF
   PRESENCE AT A CRITICAL STAGE OF THE TRIAL PROCE-
   EDING. A RIGHT, AS SET FORTH BY THE   U.S. SUPR-
   EME COURT IN: ROGERS V. UNITED STATES, 422 U.S.
   35, 95 S.CT. 2091 (1975); AND SHIELDS V. UNITED
   STATES, 273 U.S. 583, 47 S.CT. 478 (1927);  AND
   AS REQUIRED BY FEDERAL RULES OF CRIMINAL PROCED-
   URES, RULE 43(a). NAMELY, BY ISSUING  EX  PARTE
   SUPPLAMENTAL JUDRY INSTRUCTIONS TO A DELIBERATI-
   NG JURY'S INQUIRY (SUBSTANTIAL QUESTION)(IN THE
   ABSENCE OF COUNSEL AND DEFENDANT), AS TO PERTIN-
   ENT AND EXISTING LAW.

## BASIS FOR JURISDICTION.

" 'Actual innocence' means 'factual innocence, and not mere legal insufficiency.' " **Bousley v. United States**, 523 U.S. 614, at 623–24, 118 S.Ct. 1604, at 1611–1612 (1998); **United States v. Torres**, 163 F.3d 909, at 911 n.9 (5th Cir. 1999). To prove his actual innocence, Plaintiff "will demonstrate that, in light of all the evidence, it is more likely than not that no fact finder would have convicted him." Id.

This Court should bear in mind that, "the ultimate focus of inquiry must be on the [**FUNDAMENTAL FAIRNESS**] of the proceeding whose result is being challenged." **Strickland v. Washington**, 466 U.S. 668, supra, at 697, 104 S.Ct. 2052 (1984). The Supreme Court has long recognized that any procedural defect which "abort[s] the basic trial process" or "denie[s] [the adversarial process] altogether" is fundamentally unfair. See **Rose v. Clark**, 478 U.S. 570, at 576 n. 6 (1986)(internal citations omitted). Such an error, depriving the individual of the basic protections of the adversarial system so eviscerates the process that the proceedings "cannot reliably serve as a vehicle for determination of guilt or innocence." Id. Such protections are intended to assure that ... trials lead to fair and correct judgments." **Id.**, at 579.

In **Wiggins v. Smith**, Warden, et. al., No. 02–311 (2003), the Supreme Court ruled trial counsel constitutionally ineffective for failing to conduct a reasonable adequate pretrial investigation. See **Wiggins v. Smith**, (2003), 156 L.Ed.2d 471.

As was stated by the Fifth Circuit in **Caraway v.Beto**, 421 F.2d 636 (5th Cir. 1970):

"an attorney cannot render reasonably effective assistance unless he has acquainted himself with the law and facts of the case. Our adversarial system is designed to serve the ends of justice; it cannot do that unless accused's counsel presents an intelligent and knowledgeable def-

(2)

ense. Such a defense requires investigation and preparation."
**421 F.2d, at 637.** In considering whether the actions of counsel were appropriate, this Court should consider the attorney's familiarity with the facts and the law. **Hobbs v. Blackburn**, 752 F.2d 1079, at 1083 (5th Cir.) cert. denied, 474 U.S. 838 (1985). Here, Plaintiff brings to this Court's attention, trial counsel's familiarity with the facts and law of the instant case. See Plaintiff's Exhibit Number(s) (**"hereinafter Plt.'s Exh. No."**) _1_; _2_; _3_; _4_; and _5_.

In highlighting counsel's duty to investigate [both trial counsel, and Ad Testificandum counsel] and in reffering to the American Bar Association Standards for Criminal Justice as guides, this Court should apply the same "clearly established" precedent of **"Strickland."** Cf. **Strickland**, 466 U.S., at 690-691    (establishing that "thorough investigation[s]" are "virtually unchallengeable" and underscoring that "counsel has a duty to make reasonable investigations"); see also id., at 688-689 ("Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable").

## PROCEDURAL HISTORY.

Plaintiff was indicted in the United States District Court for the Southern District of Texas, on January 19th, 1999. See Plt.'s Exh. No. _6_. On March 10th-12th, 1999, Plaintiff was tried by a jury, resulting in guilty verdicts on both counts. See Plt.'s Exh. No. _7_ (Volume II-Jury Trial-page 199-lines 17-20)(same). On June 10th, 1999, Plaintiff was sentenced to concurrent terms of imprisonment of seventy-seven (77) months and thirty-six (36) months. See Plt.'s Exh. No. _8_. (Court Transcripts-Sentencing Hearing-page 8,lines 20-23)(same).

On June 10th, 1999, Plaintiff also appealed his conviction. See Plt.'s Exh. No. _9_. (Court Transcripts-Sentencing Hearing-page 9,lines 21-22)(same). On December 15th, 1999, Appeal Counsel filed an **"Anders Brief,"** in accordance with **Anders v. California**, 386 U.S. 738 (1967). See Plt.'s Exh. No. _10_. On June 27th, 2000,

**(3)**

the Fifth Circuit Court of Appeals denied Plaintiff's appeal as    frivolous    See
Plt.'s Exh. No. _11_.

    On June 15th, 2001, Plaintiff timely filed his 28 U.S.C.A. § 2255   motion to
Vacate, Set Aside, or Correct Sentence (**"hereinafter § 2255 motion"**)(claiming inef-
fective assistance of counsel for failure to investigate Plaintiff's claim of deri-
ved citizenship). See Plt.'s Exh. No. _12_. On July 13th, 2001, the government was
ordered to respond to Plaintiff's § 2255 motion. See Plt.'s Exh. No. _13_. On Septe-
mber 12th, 2001, the government petitioned for an "Extension of Time" to  respond
to Plaintiff's § 2255 motion, claiming "opposition unknown." See Plt.'s  Exh.  No.
_14_. On September 17th, 2001, United States Magistrate Judge Felix Recio,  granted
the government's motion for an extension of time to respond. See Plt.'s Exh.   No.
_15_. On November 5th, 2001, a "Writ of Habeas Corpus Ad Testificandum"  requiring
Plaintiff's presence to testify, was issued. See Plt.'s Exh. No. _16_. On  November
7th, 2001, Magistrate Judge Felix Recio filed an "Order of  Administrative  Trans-
fer," claiming "conflict of interest." See Plt.'s Exh. No. _17_. On October 1st, 20-
01, the government responded to Plaintiff's § 2255 motion. See Plt.'s Exh. No. 18.
On October 11th, 2001, Plaintiff filed his "Rebuttal to the  Government's  Respon-
se." See Plt.'s Exh. No. _19_.

    On February 8th, 2002, (without Plaintiff's presence as required by Plt.'s Ex-
h. No. _16_)an "Evidentiary Hearing" was conducted by United States Magistrate  Ju-
dge John Wm. Black. At the evidentiaty hearing Plaintiff's father, Juan Ruiz-Gonza-
lez, and Immigration and Naturalization Service (**"hereinafter I.N.S."**),   District
Adjudications Officer Rene Moreno, both testified. See Plt.'s Exh. No. _20_ (paragr-
aph 17). Furthermore, Plaintiff's court appointed counsel, see Plt.'s Exh. No. 21,
argued Title 8 U.S.C.A. § 1401(g), see Plt.'s Exh. No. _20_ (paragraph 17), knowing
since the day of his appointment, i.e. November 5th, 2001, that § 1401(a)(7) gover-
ned Plaintiff's claim of derived citizenship. See also   **Runnett  v.  Shultz**,

901 F.2d 782, 783 (9th Cir. 1990)(holding that "[t]he applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth." Title 8 U.S.C.A § 1401-(g), in amending § 1401(a)(7) applied only to persons born on or after the date of the enactment of the act, and was not to apply retroactively. See **Pub.L. 99-653, §12, 100 Stat. 3655 (1986).**

Moreover, had trial counsel or Ad Testificandum counsel, investigated the extraordinary circumstances surrounding Plaintiff's claim of derived  United  States **("hereinafter U.S.")** citizenship and presented to the adjudicating authorities (i.-e., trial judge and magistrate judge), a case whose circumstances are on all fours with the instant case, to name: **Matter of Navarrete, 12 I. & N. Dec. 138, 142 (BIA 1967),** the March 12th, 1999, guilty verdict, see Plt.'s Exh. No. _22, and the "Magistrate Judge's Report and Recommendation," filed by Magistrate Judge John  Wm. Black on February 22nd, 2002, see Plt.'s Exh. No._23,    litigation conducted   in the proceedings of the District Court for the Southern District of Texas,   would have been of a different opinion.

On March 4th, 2002, without Plaintiff's presence or knowledge of the evidentiary hearing conducted on February 8th, 2002, and without Plaintiff's knowledge  of any objections thereto, Ad Testificandum court appointed counsel filed a "Defendant's Objections" thereto. See Plt.'s Exh. No. _24. On March 19th, 2002, U.S. District Judge Hilda G. Tagle adopted the Magistrate Judge's "report and recommendation" and recommended that the case be dismissed in its entirety. See Plt.'s Exh. No._25.

On April 12th, 2002, Plaintiff corresponded with court appointed Ad Testificandum counsel attempting to bring to counsel's attention the case log pertinent  to the instant case's proceedings, and to express his desire to appeal the   District Court's dicision denying proper [litigation] of plaintiff's § 2255 motion.    See Plt.'s Exh. No. _26 (counsel's filing of Plaintiff's desitre to appeal   "letter". On April 22nd, 2002, not having heard from counsel, Plaintiff filed with the clerk

of the court, an inquiry as to whether his court appointed Ad testificandum    counsel filed an appeal of the District Court's decision denying Plaintiff's § 2255 motion. See Plt.'s Exh. No. _27. On May 6th, 2002, after having conversated with his court appointed Ad Testificandum counsel –[and having been informed by    aforesaid counsel that: the due process rights and protections afforded a defendant  in a criminal trial, did not apply to Plaintiff since the Court had litigated him as  not being a U.S. citizen]- Plaintiff filed a "Motion to Replace Court Appointed Counsel," of which the Fifth Circuit Court of Appeals denied, informing Plaintiff that, since he was represented by counsel he could not file any motions to replace same. See Plt.'s Exh. No. _28. On May 30th, 2002, U.S. District Judge Hilda G. Tagle  "denied" Plaintiff's application for a certificate of appealability. See Plt.'s Exh. No. _29· (denying Plaintiff's citizenship claim as not falling under 8 U.S.C.A.   § 1401(g)).

After the District Court denied Plaintiff's certificate of appealability petition, see Plt.'s Exh. No._29, on June 9th, 2002, Plainifff filed a complaint  with the Fifth Circuit Court of Appeals, complaining of Ad Testificandum counsel's failure to confer or consult with Plaintiff. See Plt.'s Exh. No. _30. On August  12th, 2002, via certified mail no. 7001-2510-0002-2782-6524, Plaintiff corresponded with counsel pertaining to the filing of an appeal brief, and along with the    inquiry Plaintiff sent counsel pertinent case law arguments that correspond to the instant case for counsel to raise and argue, verbatim or synonymous thereto. See Plt.'s Exh. No. _31. See also **Avery v. Alabama**, 308 U.S. 444, 446, 60 S.Ct. 321, 322 (1940) (denial of opportunity for appointed counsel to confer, consult, or prepare  converts appointment "into a sham"); **High v. Rhay**, 519 F.2d 109 (1975)("the probabilities are thet any review of the record, in light of all the arguments which diligent and experienced counsel may make for High, will still result in affirmance of  the conviction") **High**, 519 F.2d, at 113; **Horsley v. Simpson**, 400 F.2d 708, 712    (5th

Cir. 1968); Entsminger v. Iowa, 386 U.S. 748, 752, 87 S.Ct. 1402, 1404 (1967)(failure to file the entire record on appeal constitutes a violation of the Sixth Amendment). On August 26th, 2002, Plaintiff, again, sent case log he had been researching, to Ad Tesstificandum counsel that he could raise and argue these constitutional violations of trial counsel's representation to the Fifth Circuit Court of Appeals on Plaintiff's application for Certificate of Appealability. See Plt.'s  Exh. No. __32__.

On September 25th, 2002, [court appointed Ad Testificandum counsel's  failure to answer Plaintiff's correspondences, led Plaintiff to diligently continue his research into case log that is pertinent to the instant case], Plaintiff  presented counsel with a twelve (12) page Brief/Motion questioning the Court's jurisdiction. See Plt.'s Exh. No. __33__. Although this issue was not presented during jury  trial; appeal thereof; Plaintiff's § 2255 motion; or procedures thereto, the plain  error standard of review is inapplicable because jurisdictional errors may be raised  at any time and are not forfeited by the partys' failure to assert a timely   objection. Untied States v. Fitzgerald, 89 F.3d 218, at 221 n. 1 (5th Cir. 1996).       See also U.S v. Cabrera-Teran, 168 F.3d 141 (5th Cir. 1999)(An indictment's failure to charge an offense constitutes a jurisdictional defect). 168 F.3d, at 143.

On november 20th, 2002, via certified mail # 7001-1140-0000-7413-6256, Plaintiff inquired as to whether or  not Ad Testificandum counsel still represented Plaintiff, Plaintiff also inquired to counsel as to whether the issues Plaintiff requessted that he raise, raised. See Plt.'s Exh. No. __34__. On December 5th, 2002, due  to Ad Testificandum counsel's failure to confer or answer Plaintiff's "registered  mail" correspondence(s)  in reference to his appeal, Plaintiff filed an inquiry thereof to the Fifth Circuit Court of Appeals. See Plt.'s Exh. No. __35__. On the same date of December 5th, 2002, during evening "MAIL CALL" Plaintiff received from   counsel a copy of the "Certificate of Appealability with Brief in Support," a Brief    that

(7)

was filed with the Court of Appeals on September 6th, 2002, see Plt.'s Exh.    No.

_36_, and of which acknowledgement thereof, counsel enlightened Plaintiff of with  a

correspondence of December 2nd, 2002, see Plt.'s Exh. No. _37_, along with with  the

Brief, counsel attatched correspondence from the Fifth Circuit Court of Appeals th-

at was dated October 28th, 2002, see Plt.'s Exh. No. _38_, advising Plaintiff of not

filing documents with the court.

On December 4th, 2002, the Fifth Circuit Court of Appeals denied  Plaintiff's

application for a "Certificate of Appealability," see Plt.'s Exh. No. _39_, without

having heard or reviewed the meritorious issues Plaintiff requested of Ad Testifica-

ndum counsel to raise and file.

On January 2nd, 2003, "AGAIN" Plaintiff "UNAWARE" of Ad Testificandum   counse-

l's representation procedures, counsel filed a "MOTION FOR RECONSIDERATION." On Jan-

uary 22nd, 2003, Ad Testificandum counsel's/Plaintiff's motion for reconsideration,

was denied by the Fifth Circuit Court of Appeals. See Plt.'s Exh. No. _40_. On Febru-

ary 24th, 2003, via certified mail# 7002-2030-0005-8230-3263, Plaintiff  "requested"

a copy of the so called motion for reconsideration, that Ad Testificandum counsel fi-

led, and inquired into counsel's "elusive representation". See Plt.'s Exh. No.  _41_.

On March 10th, 2003, Ad Testificandum counsel answered Plaintiff's February   24th,

2003, correspondence, and "partially" sent Plaintiff the copy of the "motion for rec-

onsideration," i.e., [the cover page of the motion for reconsideration; a "Certifica-

te of Service" for same; and a "Certificate of Conference"]. See Plt.'s Exh. No. _42_.

On March 17th, 2003, via certified mail# 7001-1140-0000-7407-4381, Plaintiff "again"

requested a copy of the motion for reconsideration that counsel had filed, and parti-

ally sent, see Plt.'s Exh. No. _43_, to date, Plaintiff has not heard from court appo-

inted Ad Testificandum counsel.

After numerous attempts to bring to the [court's] attention the   extraordinary

circumstances surrounding Plaintiff's citizenship claim, counsel's violation of  the

**(8)**

Sixth Amendment, and complaining to the Fifth Circuit Court of Appeals about Ad Test-ificandum counsel's misrepresentation, on March 3rd, 2003, Plaintiff attempted to bring to the U.S. Supreme Court's attention the circumstances of the instant case, via a Writ of Certiorari, which was returned on March 11th, 2003, with a sixty (60) day interval to resubmit the writ. See Plt.'s Exh. No. 44. On May 12th, 2003, well within the sixty days allowed for resubmission, Plaintiff "again" presented his writ of certiorari, on May 16th, 2003, the Court returned Plaintiff's writ, claiming that it was out-of-time. See Plt.'s Exh. No. 45. On June 16th, 2003, the Court filed Plaintiff's writ: i.e., No. 02-11160, retroactively to March 3rd, 2003. See Plt.'s Exh. No. 46. On October 6th, 2003, the Court denied Plaintiff's petiton for Writ of Certiorari. See Plt.'s Exh. No. 47.

1. **RELIEF FROM JUDGMENT AND LEAVE TO FILE AMENDED COMPLAINT.**

**Rule 60(b):**

Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of the judgments. **Seven Elvs, Inc. v. Eskenasi,** 635 **F.2d 396 (5th Cir. 1981).** In other words it should be construed to do "substantial justice," **Seven Elvs, 635 F.2d, at 401.** In deciding a 60(b) motion, "a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." **Kotlicky v. Untied States Fidelity & Guar. Co.,** 817 F.-2d 6, at 9 (2d Cir. 1987). See also **11 Charles A. Wright, Arthur R. Miller & Mary kay Kane, Federal Practice and Procedure § 2857 (1995).**

This Court must take the complaints well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff when challenged by a motion to dismiss. **Scheuer v, Rhodes, 416 U.S. 232, at 236, 94 S.Ct. 1683, at 1686 (1974).** A motion to dismiss will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. **Hishon v. King & Spalding, 467 U.S. 69, 104 S.Ct. 2229 (1984); Conley v.**

**Rule 60(b)(1):**

Plaintiff argues that he "should not be punished for inadequate representation." Relief from counsel's errors "normally is sought pursuant to 60(b)(1) on the theory that such error constitutes mistake, inadvertance, or excusable neglect." **Nemaizer v. Baker**, 793 F.2d 58, at 62 (2d Cir. 1986). Rule 60(b) is an appropriate means to bring a claim that the conduct of counsel affected the integrity of the court's habeas proceeding. **Banks v. U.S.**, 167 F.3d 1082, id., at 1084 (7th Cir. 1999). See also **Dunn v. Cockrell**, 302 F.3d 491, at 493 (5th Cir. 2002), (citing **Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.**, 507 U.S. 380, id., at 395, 113 S.Ct.1489 (1993) (if Dunn was entitled to Rule 60(b) relief upon establishing his counsel's "excusable neglect," Pioneer might be helpful to him.).

Fed.R.Civ.P. Rule 60(b)(1) states in Pertinent part, "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reason[]: (1) mistake, inadvertance, or excusable neglect ... The motion shall be made within a reasonable time, and for reason (1), ... not more than one year after the judgment ... was entered or taken." **Id.** See also Plt.'s Exh. No.(s): _47_; _39_; _29_; and _25_.

The plain language of Rule 60(b)(1) demonstrates that the motions made pursuant to this rule seek extraordinary relief. The First Circuit has explained that by its terms, Rule 60(b0(1) "attempts to balance the desirability of finality as applied to court judgments with the desirability of finality of deciding disputes on the merits." **In re Mayhew**, 223 B.R. 849, 855 (D.R.I. 1998). Thus, it is within this court's discretion to grant Plaintiff's motion if it satisfies the following three requirements: (1) it is timely, (2) it involves exceptional circumstances that justify the extraordinary relief; and (3) it is not unfairly prejudicial to the opposing party. see **Davilla-Alvarez v. Escuela de Medicina Universidad Central del Caribe**, 267 F.3d 58, at 63-64 (1st Cir. 2001); see also **In re Mayhew**, 223 B.R., at 854-55.

**Rule 60(b)(6):**

While Plaintiff premises his Rule 60(b) motion on one provision of Rule 60(b), 60(b)(1), he also attempts to specify a basis for vacation of the district court's

denial of his § 2255 motion under Rule 60(b)(6), a catchall provision that applies only where none of the other bases for relief specified in Rule 60(b) is satisfied, and here Plaintiff can demonstrate "extraordinary circumstances" and "extreme hardship." See **e.g.**, **United States v. Cirami**, 563 F.2d 26, at 32 (2d Ed. 1977).

Fed.R.Civ.P. Rule 60(b) provides in pertinent part: that a "court may relieve a party ... from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." The Rule:

> confers broad discretion on the trial court to grant relief when appropriate to accomplish justice, ... [and] it constitutes a grand reservoir of equitable power to do justice in a particular case. ... It is properly invoked where there are extraordinary circumstances, ... or where the judgment may work an extreme and undue hardship, ... and should be liberally construed when substantial justice will thus be served.

**Matarese v. LeFevre**, 801 F.2d 98, at 106 (2d Cir. 1986)(internal quotations and citations omitted); accord **Manhatten Cable Television, Inc. v. Cable Doctor,   Inc.**, 824 F.Supp. 34, at 35 (S.D.N.Y. 1993)(quoting Matarese and granting plaintiff's Rule 60(b)(6) motion and leave to amend).

Here, Plaintiff will demonstrate that extraordinary circumstances exist  which prevented Plaintiff's father's ability to comply with the residence   requirements required of a citizen parent pursuant to Title 8 U.S.C.A. § 1401(a)(7)(1952)**("hereinafter § 1401(a)(7)")**, due to a government official's misconduct and    misinformation of pertinent and existing law, as told to the Gonzalez family in 1964,  upon their inquiry to the American Consulate of Nuevo Laredo, Tamaulipas, Mexico, pertaining to their American citizenship status. **Matter of Navarrete**, 12 I. & N.   Dec. 138, 142 (BIA 1967), is analogous to the facts of this case.

Moreover, denial of Plaintiff's Rule 60(b)(6) motion will work an undue hardship on Plaintiff. Being that, Plaintiff has not had an opportunity to have this underlying claim considered by the court(s).

The February 8th, 2002, evidentiary hearing was limited solely to Plaintiff's

father not having met the residence requirement of § 1407(a)(7). Thus, "[t]o allow the judgment to stand would deny [Plaintiff] the opportunity to have its allegations tested under appropriate standards." See **Faberge, Inc. v. Wyman**, No. 82 Civ. 69-15 (JMC), 1987 WL 16279, at *2 (S.D.N.Y. Feb. 25, 1987)(granting plaintiff's Rule 60(b)(6) motion); cf. **Deeweerth v. Baldinger**, 8 F.3d 1266, 1272 (2d Cir. 1994)(reversing a district court's granting of a 60(b)(6) because it "inappropriately disturbed a final judgment in a case that had been fully litigated and was long since closed"); **Petersen v. Valensco**, 803 F.Supp. 875, 877 (S.D.N.Y. 1992)(denying a 60-(b)(6) motion because plaintiff was repeating arguments that were previously before the court and "given the full weight of consideration").

**Rule 15(a):**

Even after entry of judgment or dismissal, however, assuming the requirements of Rule 59(e) or 60(b) have been fullfilled, the liberal standard of Rule 15(a) still controls, and "leave [to amend] shall be freely given when justice so requires." See **Union Planters National Leasong, Inc. v. Woods**, 687 F.2d 117 (5th Cir. 1982); **6 C. Wright & A. Miller, Federal Practice and Procedure**, Civil § 1488, p. 437 (1971). The appropriate starting point for amendment of pleading is Fed.R.Civ.P. Rule 15(a). Rule 15(a) provides in pertinent part:

> ... Otherwise a party may amend the party's pleading only by leave of the court ...; "and leave shall be freely given when justice so requires." A party shall plead on response to an amended pleading ... within 10 days after service of the amended pleading, .... (emphasis added).

In **Paganis v. Bolenstein**, 3 F.3d 1067 (7th Cir. 1993), it was noted that "a district court generally should first examine the merits of a rule 15(a) motion before deciding whether to grant a Rule 59(e) or 60(b) motion." **Paganis**, 3 F.3d, at 1073 n. 7.

In this case, this Court entered a judgment denying Plaintiff's § 2255 motion. See Plt.'s Exh. No. _25_. This is not fatal to Plaintiff's claim of derived U.-

S. citizenship, as a court may grant a plaintiff's motion for leave to amend  even after judgment has been entered. See **e.g.,** **United States Labor Party v. Oremus,** 61-9 F.2d 683, at 692 (7th Cir. 1980). See also **6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1473, at 520 (2d ed. 1990)**(suggesting that the function of amendments under Rule 15(a) is to allow a party "to assert matters that were overlooked or were unknown at the time of the original [motion]").

In **Foeman v. Davis,** 371 U.S. 178, 83 S.Ct. 227 (1962), the U.S. Supreme Court stated:

> [T]his mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he  ought to be afforded an opporutnity to test his claim on the merits.

**Foeman,** 371 U.S., at 182, 83 S.Ct., at 230.

Similarily, the Fifth Circuit is also in agreement with the Supreme  Court. See **Price v. Pinnacle Brands, Inc.,** 138 F.3d 602, at 608 (5th Cir. 1998)(citing Foman v. Davis). The Fifth Circuit has before stated that "leave to amend should  be freely granted." See **Jamieson By and Through Jamieson v. Shaw,** 772 F.2d 1205,  at 1208 (5th Cir. 1985). While noting that "this determination [of whether to  grant leave to amend] rest in the sound discretion of the district court," the Fifth Circuit has emphasized that Fed.R.Civ.P. 15(a) " ' evinces a bias on favor of  granting to leave.' " See **Id.**; see also **Chitimacha Tribe of Louisiana v. Henry L.  Laws Co.,** 690 F.2d 1157, at 1163 (5th Cir. 1982)(citing Dussouy v. Gulf Coast  Investment Corp., 660 F.2d 594, 597 (5th Cir. 1981)), cert. denied, 464 U.S. 814, 104 S.Ct. 69 (1983).

Accordingly, the Fifth Circuit has held that if the district court lacks a "substantial reason" to deny leave, its discretion is "not broad enough to permit denial." See **Jamieson,** 772 F.2d, at 1208; **Dussouy,** 660 F.2d, at 598. In sum, the district court must have a "substatnial reason" to deny leave to amend. **Id.**; **Le Fall v. Dallas Indep. Sch. Dist.,** 28 F.3d 521, at 524 (5th Cir. 1994); **Jacobson v. Osbo-**

rne, 133 F.3d 315, at 318 (5th Cir. 1998); <u>Lone Star Motor Import, Inc. v. Citroen
Cars Corp.</u>, 288 F.2d 69 (5th Cir. 1961)(abuse of discretion to deny leave to file
valid amended complaint).

An amendment is not futile if there are "colorable grounds for relief" on the
new claim. See <u>Ryder Energy Distrb. Corp. v. Merril Lynch Commodities Inc.</u>, 748 F.-
2d 774, at 783 (2d Cir. 1984). If the only proffered justification for denying lea-
ve to amend a complaint is futility, determination that prosposed amended  compla-
int is legally sufficient and not cumulitive deprives the District Court of all su-
bstantial reason to deny leave and severely restricts its discretion to do so. <u>Jam-
ieson</u>, 772 F.2d 1205, <u>3 Fed.R.Serv. 3d</u> (LCP) 860 (5th Cir. 1985). In <u>Textor v. Boa-
rd of Regents</u>, 711 F.2d 1387 (7th Cir. 1983), the court stated that "[d]elay   in
presenting the amendment will be sufficient basis for denial of leave   to  amend
<b>only</b> when the delay has caused the opposing party undue prejudice." <u>Textor</u>, 711 F.-
2d , at 1391. See also <u>Casson v. Polly</u>, 689 F.2d 562, at 584 (5th Cir. 1982)("Mere-
ly because a claim was not presented as promptly as possible, however,   does not
vest the district court with authority to punish the litigant").

The intent of Rule 15(a) is to assist the disposition of litigation on   the
merits  of the case rather than have pleadings become ends in themselves. <u>United
States v. Houghan</u>, 364 U.S. 310, 317, 81 S.Ct. 13, 18 (1960); <u>Conley</u>, 355   U.S.,
at 48, 78 S.Ct., at 103 (1957); <u>McLellan v. Mississipi Power & Light Co.</u>, 526  F.-
2d 870, supra, at 873 (5th Cir. 1976); 3 Moore's Federal Practice, § 15.02[1], at
15-13. It is settled that a Rule 15(a) amendment can add new causes of action and
new theories or recovery, even if the original complaint did not state a valid ca-
use of action. <u>McLellan</u>, at 873, modified on  other grounds, 1977, 545 F.2d   919
(en banc). See <b>generally</b>, 3 Moore's Federal Practice, ¶ 15.08[2], at 15-68  to 71
(2d ed. 1980); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1474, at
379-85 (1971). "It is too late in the day and entirely contrary to the spirit  of

(14)

the Fed.R.Civ.P. for decisions on the merits to be avoided on the basis of ... mere technicalities." **Foeman**, 371 U.S., at 181, 83 S.Ct., at 227.

The government will not need to conduct significant additional discovery regarding Plaintiff's reliance of the alleged misrepresentations of counsel[s]    failure to investigate pertinent law, or Ad Testificandum counsel's failure to present litigation of the loss of Plaintiff's Sixth Amendment rights afforded to a defendant in a criminal trial, rights which are protected by the Sixth Amendment of the U.S. Constitution.

Prejudice does not mean inconvenience to a party. Moreover, it is obvious that an amendment, designed to strenghten the movants legal position, will in some   way harm the opponent. In the context of a 15(a) amendment, prejudice means that the non-nmoving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." **Heyl v. Patterson Intern. v. F.D. Rich Housing**, 663 F.2d 419, at 426 (3d Cir. 1981). **CF. Cornell & Co., Inc. v. Occup. S. & H. Review Com'n**, 573 F.-2d 820, at 825 (1978)(court denied the government's motion to amend as delay   was the cause of the defendant's inability to secure the testimony of viatal witnesses).

The cases that have held that the government will not be prejudiced are: **Hanlin v. Mitchelson**, 794 F.2d 834, at 840–41 (2d Cir. 1986)(concluding that at the time of filing original complaint plaintiff was unaware of the facts suppoting the  proposed amended calim)(see also Plt.'s Exh. No.  12); **Wieglos v. Commonwealth Edison   Co.**, No. 84 C 1222, 1987 WL 7499, at *3 (N.D. Ill. Feb. 27, 1987)(granting leave to amend where amendment sought to "simplify and clarify plaintiff's cause of action" eliminated a count and the new allegation added no new claims); **Agristor Credit Corp. v. Sc-midlin**, 601 F.Supp. 1307, at 1314–15 (D.Or. 1985)(granting leave to amend where  new claim regarding adequancy of warranty was related to prior allegations that  product was defective; in conclusory fashion the court decided an amendment would not be  un-

duly prejudicial).

Leave may be dinied due to delay, but the delay must unduly prejudice the opposing party. See **Doherty v. Davy Songer, Inc.**, 195 F.3d 919, at 922, 927 (7th Cir.-1999). To prevent Plaintiff from amending his § 2255 motion based on what he should have known at the time of filing his original motion would add insult to the injury Plaintiff alleges he suffered at the hands of [court appointed attorney's] representation, Rule 15(a) does not require so harsh a result. See also Plt.'s Exh. No. _12_.

## Rule 15(c):

The starting point for this Court's analysis of Plaintiff's attempt to amend his § 2255 motion is Fed.R.Civ.P. Rule 15(c). F.ed.R.Civ.P. Rule 15(c) provides that "an amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading..... Fed.R.Civ.P. Rule 15(c)(2). "The rationale of the rule is that, once litigation involving a particular transaction has been instituted, the parties should not be protected [by the statute of limitations] from later asserted claims that arose out of the same conduct set forth in the original pleadings." **Kansa Reinsurance Co. v. Congressional Mortgage Corp.**, 20 F.3d 1362, 1366-67 (5th Cir. 1994)(citing 6A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1496 (1990)).

As here. "[I]f plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in a prior complaint, then relation back is allowed." **F.D.I.C. v. Conner**, 20 F.3d 1376, 1386 ( 5th Cir. 1994). "Notice is the critical element involved in Rule 15(c) determinations." **Williams v. United States**, 405 F.2d 234, 236 (5th Cir. 1968). The doctrine of relation back under Rule 15(c) is liberally applied today in Federal Courts, especially if no disadvantagewill accrue to the opposing party. **1A Barron & Holtzoff**, **Federal Pract-**

ice and Procedure **§ 448 (Wright 1960)**. See also **Baldwin County Welcome Ctr. v. Brown**, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723 (1984)(The rationale behind Rule 15 (c)(2) is that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.); **Mandacina v. U.S.**, 328 F.3d 995, 999–1000, and n. 3 (8th Cir. 2003)(same).

Under Rule 12 of the Rules Governing Section 2255 Proceedings, in the absence of a procedure specified either in the rules or in the statute, a district court "may apply the Federal Rules of Criminal Procedure or the Fed.R.Civ.P., whichever it deems most appropriate, to motions filed under these rules." While both § 2255 and its governing rules are silent as to amendments, **28 U.S.C.A. § 2242** provides that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." The Fifth Circuit, as well as other circuits, have held that this principle applies to § 2255 proceedings as well, and, therefore that such motions may be amended under terms set forth by Rule 15(a). See **United States v. Saenz**, 282 F.3d 354, 356 (5th Cir. 2002); **United States v. Pittman**, 209 F.3d 314, 317 (4th Cir. 2000); **United States v. Duffus**, 174 F.3d 333, 336–37 (3d Cir. 1999); cf. **Fama v. Comm'r. of Correctional Servs.**, 235 F.3d 804, 815–16 (2d Cir. 2000)(holding that §§ 2254 and 2255 should be construed in pari materia with respect to the "timeliness of motions for leave to amend"). Accordingly, the "permissive approach" evinced by Rule 15(a) to the amendment of pleadings applies with equal force to § 2255 motions. **United States v. Thomas**, 221 F.3d 430, 435–36 (3d Cir. 2000); cf. 6A Charles Alan Wright & Arthur R. Miller, **Federal Practice and Procedure § 1471**, at 505–06(observing that the purpose of 15(a) "is to provide maximum opportunity for each claim to be decided on the merits rather than on procedural technicalities").

Plaintiff's original § 2255 motion came within the limitation period, filed as it was on June 15th, 2001, this amendment is not time-barred, seeing how it is

subsumed by the timely first motion pursuant to the "relation back" doctrine. While § 2255 and its governing rules say nothing about relation back, that  doctrine  is well-established in ordinary civil procedure, through Rule 15(c). The rule provides that, under certain circumstances, an amendment of a pleading relates back to  the date of the original pleading, thereby avoiding statute of limitations problems  that otherwise might have beset the amendment. See **6A Charles A. Wright, & Arthur  R. Miller, Federal Practice and Procedure § 1496, at 64; Singletary v. Pennsylvania Dep't. of Corrections**, 226 F.3d 186, 193 (3d Cir. 2001)("Rule 15(c)  can  ameliorate the running of the statute of limitations on a claim by making the amended   claim relate back to the original, timely filed complaint.").

Other Circuits agree that hte basic principles of Rule 15(c) apply to   amendments of § 2255 motions. See **United States v. Espinosa-Saenz**, 235 F.3d  501,  503–05 (10th Cir. 2000); **Davenport v. United States**, 217 F.3d 1341, 1344–46 (11th Cir. 2000); **United States v. Pittman**, 209 F.3d 314, at 317 (4th Cir. 2000); **United    States v. Craycraft**, 167 F.3d 451, 457 (8th Cir. 1999). They have thus rejected the argument that the legal changes imosed by Antiterrorism and Effective Death Penalty   Act preclude the relation back of amendments that otherwise would be time-barred.   See **Anthony v. Cambra**, 236 F.3d 568, 576–78 (9th Cir. 2000); **Fama v. Comm's of Correctional Servs.**, 235 F.3d, at 815–16 ; **United States v. Thomas**, 221 F.3d 430, at 434–37 (3d Cir. 2000). Section 2255's "period of limitation" is a statute of   limitations like any other, and like any other is subject to the principles of  relation  back. Cf. **Dunlap v. United States**, 250 F.3d 1001, 1004 & n. 1 (6th Cir. 2001)(joining everuy other circuit to have considered the question in holding that "the one year limitation period under § 2255 (or 2254) is a statue of limitations, subject, to   the doctrine of equitable tolling, rather than a jurisdictional requirement").

In the context of § 2255 amendments the courts have taken a relative   consistent approach to relation back. Although Rule 15(c) could be read to mean that   the relevent "occurrance" is the claimant's trial and sentencing,  this  interpretation

has been resisted, and with good reason. In most cases, a prisoner's claims for collateral relief will arise out of the same criminal conviction; therefore, if the defendant's trial and sentencing are construed to be the "occurrence," virtually any purported amendment will relate back. Such a result would be difficult to square with Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions. See **Espinosa-Saenz**, 235 F.3d, at 505; **Davenport**, 217 F.3d, at 1345-46; **Pittman**, 209 F.3d, at 318.

Other Circuits have held that Rule 15(c) does not apply where the prisoner's proposed amendment makes claims or is based on occurrences "totally separate and distinct, 'in both time and type' from those raised in the original motion." **Espinosa-Saenz**, 235 F.3d, at 505 (quoting Craycraft, 167 F.3d at 457); see also **Davenport**, 217 F.3d, at 1344(suggesting that, in order to relate back an untimely claim must have arisen from the "same set of facts" as the timely claim). Rule 15(c) does not refer to a "claim"; it is uses the broader phrase "conduct, transaction, or occurrance" – which is to say, the events under analysis, not the legal themes deployed in the analysis. A prisoner who comes up with ten different ways to contest his sentence still is litigating about a single transaction or occurrence (the supposedly unlawful sentence), so an amendment necessarily relates back under 15(c)(2). An amended petition should not be treated as a new one; otherwise every amendment would be a forbidden "second or successive" petition, a position that has been rejected. See **Johnson v. United States**, 196 F.3d 802 (7th Cir. 1999). In such circumstances, the government would be deprived of "sufficient notice of the facts and claims giving rise to the proposed amendment," thus subverting the central policy of the relation-back doctrine. **Anthony**, 236 F.3d, at 576.

In contrast, in cases in which such notice has been afforded, for example where the prisoner's amendment seeks [**as here**] merely to eloborate upon his earlier claims, this effort should not generally be barred by the statute of limitations. See **Dean v. United States**, 278 F.3d 1218, 1222 (11th Cir. 2002)("When the nature of the

amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient  facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim."); **Duffus**, 174 F.3d, at 337 ("Certainly the court could have permitted an amendment to clarify a claim initially made.").

Thus, while an amendment offered for the purposes of adding to or  amplifying the facts already alleged in support of a particular claim may relate back, see **Thomas, 221 F.3d, at 436** (observing that an amendment seeking "to correct  a  pleading deficiency by expanding the facts but not the claims alleged in the petition" would clearly fall within Rule 15(c)), Plaintiff presents his motion seeking amendment of his timely filed § 2255 motion bringing to this Court's attention pertinent and existing law applicable to his citizenship claim.

2. **WHETHER THE GOVERNMENT IS ESTOPPED FROM DENYING PLAINTIFF"S CITIZENSHIP INDER THE FACTS UNDERLYING THE INSTANT CASE, IN LIGHT OF THE PRINCIPLES HANDED DOWN BY THE U.S. SUPREME COURT IN: MONTANA v. KENNEDY, 366 U.S. 308,  81 S.CT. (1961); AND AS LITIGATED BY THE IMMIGRATION AND NATURALIZATION SERVICE'S BOARD OF IMMIGRATION APPEALS IN: MATTER  OF NAVARRETE (1967), 12 I. & N. DEC. 138.**

Plaintiff's father, Juan Ruiz-Gonzalez (**"hereinafter Mr. Gonzalez"**), was  born abroad to one un-wed native born U.S. citizen mother on December 17th, 1944. At the time of Mr. Gonzalez's birth **Section 201(e), of the Immigration and Nationality Act of 1940** governed the birth of one born abroad to an un-wed American citizen  woman. The 1940 Act provided, in pertinent part:

"if the mother had the nationality of the United States at the

time of the child's birth ... shall be held to have  acquired

at birth her [national]ity status."

**id., Section 201(e), of the 1940 Immigration and Nationality Act.** See also **Miller v. Albright, 523 U.S. 420, 118 S.Ct. 1428 (1988)**(Nationality and citizenship  are

not entirely synonymous; one can be a national of the United States and yet not a citizen. **8 U.S.C. § 1101(a)(22)** [8 U.S.C. § 1101(a)(22)].... The provision that a child born abroad out of wedlock to a United States citizen mother gains her nationality has been interpreted to mean that the child gains her citizenship as well;) [here, Plaintiff's father was born a national in accordance with Section 201(e), and his citizenship was not recognized until June 27th, 1966]

In turn Plaintiff was born April 8th, 1967, [well within the seven (7) years in any continuous period or periods required of 8 U.S.C. § 1408(4)], at the time of Plaintiff's birth, 8 U.S.C. § 1408 provided:

**NATIONALS BUT NOT CITIZENS OF THE**

**UNITED STATES AT BIRTH**

Unless otherwise provided in section 1401 **(the government is arguing that Mr. Gonzalez did not meet the ten (10) year requirement of 8 U.S.C. § 1401(a)(7))**, of this title, the following shall be nationals but not citizens, of the United States at birth (in pertinent part):

(4)   A person born outside the United States ... of parents one of whom is a national 2/ ... who, prior to the birth of such person, was physically present in the United States ... for a period or periods totaling not less than seven years in any continuous period of ten years:

(A) during which time the national parent was not outside the United States ... for a period of more than one year, and

(B) at least five years which were after attaining the age of fourteen years.

**8 U.S.C. § 1408(4)(A)(B).**

As the record will reflect, an evidentiary hearing was held on February 8th, 2002. Mr. Gonzalez testified as to his residence in the U.S. at some time period

---

**2. The 1940 Immigration and Nationality Act, provided a child born abroad to one unwed American citizen mother, the mother's [national]ity, "at birth."**

**(21)**

between 1959 and 1967. Events clearly indicate that Mr. Gonzalez has been physically present continuously from 1959 to present. See 8 U.S.C. § 1408(4), id., "not less than seven years in **any continuous period of ten years.**" (emphasis added).

Notwithstanding, in the instant case there is "affirmative misconduct" on the part of a U.S. Official, namely, the American Consulate at Nuevo Laredo,  Tamaulipas, Mexico. To whom, the Gonzalez family was directed to, to inquire about  their assumed citizenship status. Said Consulate's misrepresentation of pertinent and existing law (as to the national/citizen status of a child born abroad to an  un-wed American citizen), the Gonzalez family reasonably relied on, and thus, were prevented from officially registering an American address or establishing an earlier residence in the U.S. prior to Plaintiff's birth.

As was noted by the U.S. Supreme Court in **Montana v. Kennedy, 366 U.S. 308, 81 S.Ct. 1336 (1961),** "we need not stop to inquire whether, as some lower  courts have held, there may be circumstances in which tha United States is estopped to deny citizenship because of the conduct of its officials." **Id., at 314, 81 S.Ct., at 1341.**

Equitable estoppel is a doctrine invoked to avoid injustice in particular cases. **United States v. Government Development Bank, 725 F.Supp. 96 (D.  Puerto Rico 1989),** citing **Heckler v. Community Health Services, 467 U.S. 51, 104 S.Ct. 2218 (1-984).** The requirements are as follow: first, a material misrepresentation; second, a reasonable reliance upon the misrepresentation; and finally, some  disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation. **Falcone v. Pierce, 864 F.2d 226, at 228 (1st Cir. 1988).**

Mr. Gonzalez, a [national] in accordance with Section 201(e) of the 1940 Immigration and Nationality Act, pursued the claim of U.S. citizenship once  he became aware of the rights involved, and on May 10th, 1966, was interviewed by an Immigration agent. Thereafter, on June 27th, 1966, the Attorney General issued  Mr.

Gonzalez a Certificate of Citizenship. See Plt's Exh. No. 48. Mr. Gonzalez was born a [national] of the United States in accordance with Section 201(e)("shall be held to have acquired at birth her [national]ity," id.), he was officially recognized as a United States citizen in June 27th, 1996.

Some time in 1963, Plaintiff's uncle Raymundo Ruiz-Gonzalez, in trying to get his United States citizenship recognized, was requested to go with his (un-wed) mother, to the United States Consulate in Nuevo Laredo, Tamaulipas, Mexico, to see if he had acquired United States citizenship through his mother. Around April of 1964 (Mr. Gonzalez at that time was working as a day laborer at the Callaghan Ranch, near Encinal, Texas), together the mother presented **Mauro, Raymundo, Antonio, and Angelica - Gonzalez** '↳ to the United States Consulate, and was [erroneously] informed by **Mrs. Guerra**, there at the Consulate, that the children could not claim United States citizenship through her. See Plt.'s Exh. No. 49. The next time the Gonzalez family renewed their interest of their citizenship status was on or about April of 1996, when "Adolfo Gomez," Mauro's brother-in-law told them about attorney "Arnulfo Guerra." Who adviced the Gonzalez that [all of them] [including all] their [brothers and sisters] appeared to have a good claim of United States citizenship, and assisted them in submitting their N-600's, and informing them when their certificate's arrived, See Plt,'s Exh. No. 50.

The Supreme Court has declined to rule that "estoppel" can never be applied against the government under any circumstances. See Office of Personal Managment v Richmond, 496 U.S. 414, at 423, 110 S.Ct. 2465 (1965); Heckler v. Community Health Services, 467 U.S. 51, at 60-61, 104 S.Ct. 2218 (1984). Instead it has "mention[ed] the possibility ... that some type of 'affirmative misconduct' might give rise to estoppel against the government." Office of Personal Managment, 496 U.S., at 421-22, 110 S.Ct. 2465 (citing Heckler, 467 U.S. at 60, 104 S.Ct. 2218; I.N.S. v. Miranda, 459 U.S. 14, 19, 103 S.Ct. 281 (1982); Schweiker v. Hansen, 450 U.S. 785, 788, 101 S.Ct. 1468 (1981); I.N.S. v. Hibi, 414 U.S. 5,8, 94 S.Ct. 19 (1973).

As evidence, at the February 8th, 2002, evidentiary hearing, the government presented the application for certificate of citizenship signed by Mr. Gonzalez during the interview conducted on May 10th, 1996. The probative value of this document is severely undermined by the circumstances of its execution. Mr. Gonzalez could neither read nor write english, the application was drafted by an immigration agent with a "working knowledge of spanish", who asked Mr. Gonzalez a question in spanish, heard the reply, translated and typed the answer in english into the application. This process was clearly subject to misunderstanding and inaccurancy. For example, the application speaks on terms of "residence." It is unlikely that Mr. Gonzalez understood the legal significance of the term "residence" or that the agent used it properly. The statute speaks only of being "physically present" not of "residence." See id., §1401 (a)(7); see also 8 U.S.C. §1408 (4)(A)(B). The application for certificate of citizenship neither alone nor with I.N.S. Adjudications Officer "Rene Moreno's" testimony establish the government's case.

Plaintiff implores this Court to compare and apply the instant case's familiarity of applying "constructive residence" and "constructive Physical presence," with the fact situation in Matter of Navarrete (1967), 12 I.& N. Dec. 138,142. Where, as here, a 29 year old native of Mexico who derived citizenship from a native-born American father (in the instant case, it was a native-born mother), and who made a number of visits to relatives (in the instant case, Plaintiff's father made trips to work), but who was erroneously excluded from the United States in (1954), when the government ruled that the citizenship retention requirements still applied to her case, (in the instant case, the United States Consulate told the Gonzalez family the same retention requirements).

There, the Board of Immigration Appeals ("hereinafter, the board"), observed that constructive residence and constructive physical presence are familiar concepts in immigration law, generally coming into play where actual residence or presence is prevented by circumstances beyond a persons control − "here, common sense will show that in order for plaintiff's father to meet the ten (10) year

residence requirement of §1401 (a)(7), prior to Plaintiff's birth of April 8th, 1967, Mr. Gonzalez would have had to leave home, (his mother's care), at the age of thirteen (13), a mere child, Plaintiff's father entered the United States (by) wading the Rio Grande) on or about (1959), for employment purposes as a day labor," - or by reliance upon erroneous information received from a United States Official - "here, in (1964), the United States Consulate of Nuevo Laredo, Tamaulipas, Mexico, told the Gonzalez family, (Mr. Gonzalez was working as a day laborer st the Callaghan Ranch, near Encinal, Texas), that they could not claim United States Citizenship through her, when Section 201 (e) of the (1940) Immigration and Nationality Act named children of an unwed American mother, as Nationals/Citizens" - the Board stated that in such cases it is not equitable to penalize individuals for factors that they could not control or circumstances that they did not create, the Board "concluded that Navarrete had relied upon a United States Official's erroneous interpretation of law and thus she had constructively completed the necessary residence requirement to retain her United States Citizenship and that her constructive residence period could apply to the requirement necessary to transmit citizenship to her foreign born children.  See Drozd v. I.N.S., 155 F.3d 81, id., at 88 (2d Cir. 1988)(citing Matter of Navarrete).

### 3. WHETHER PLAINTIFF WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT A CRITICAL STAGE OF THE PROCEEDING, NAMELY, A DELIBERATING JURY"S INQUIRY (SUBSTANTIAL QUESTION). AS TO PERTINENT AND EXISTING LAW.

The Sixth Amendment included the guarantee of assistance of counsel because "it invision[ed] counsel playing a role that is critical to the ability of the adversarial system to provide just results." the "'very premise' of our adversary system *** is that partisan advocacy on both sides of the case will best promote the ultimate objective that the guilty be convicted and the innocent go free," and it was this "'very premise' that underlies and gives meaning to the Sixth Amendment." "The right to effective assistance" of counsel, the United States v. Cronic,

25.

466 U.S. 648, 104 S.Ct. 2039 (1984), opinion noted, is "the right of the accused to require the prosecutor's case to survive the crucible of meaningful adversary testing." The United States Supreme Court noted in Strickland v. Washington, that the right to counsel was aimed, like other Sixth Amendment rights, at providing the "basic elements of a fair trial." A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal. 466 U.S., at 685, 104 S.Ct. 2052. Also see McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441 (1970)(the right to counsel is the right to effective assistance of counsel).

Counsel for a criminal defendant must make a reasonable investigation into the preparation of his case. Kenley v. Armontrout, 937 F.2d 1298, at 1304 (8th Cir. 1991). Counsel's assistance will be found to be ineffective if he has performed little or no investigation into the case. Id. Generally, a finding of ineffective assistance will be based in a failure to investigate where the evidence which the investigation would have produced, would have made the defendant's conviction nearly impossible. Passos-Paternia v. United States, 12 F.Supp. 231, at 236 n.4 (D. Puerto Rico 1998). See also §1401 (a)(7); 8 U.S.C. §1408 (4)(A)(B); and Matter of Navarrete, (1967), 12 I. & N. Dec. 138, 142. An attorney has a duty to research the applicable and to advice his client in such a way as to allow him to make informed choices, when the attorney undertakes to represent a criminal defendant. Straw v. United States, 931 F.Supp. 49, 51-52 (D. Mass. 1996).

Certainly failure to prepare makes the fundamental right to the assistance of counsel hollow. As was noted by the United States Supreme Court in Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321 (1940)(denial of opportunity for appointed counsel to confer, consult, or prepare, converts appointment "into a sham") 308 U.S., at 446, 60 S.Ct. at 322. Defense counsel must be familiar with the laws and facts of the case in order to provide effective assistance of counsel. United States v. Burton, 575 F.Supp. 1320 (E.D. Texas 1983). See also Plt.'s Exh. No.(s) 1;2;3; and 4; (Trial Counsel's pre-trial investigation).

On March 10th, 1999, Plaintiff proceeded to "trial by jury." During jury instruction the Court failed to charge the jury on an essential element of Count two (2) of the indictment, namely, Plaintiff's birth abroad to one United States National/Citizen parent. Count two (2) of the indictment charges: (in pertinent part)

> "Falsely and willfully claiming to be a citizen
> of the United States of America."

See Plt.'s Exh. No. 6. Trial counsel's failure to contest the omission of an essential element from the jury charge, constitutes ineffective assistance of counsel. Lombard v. Lynaugh, 868 F.2d 1475 (5th Cir. 1989).

In accordance with §1401 (a)(7), to derive United States Citizenship, the elements of the transmission of citizenship are: (1) one alien parent, and one citizen parent; see Plt.'s Exh. No. 51; (2) the citizen parent is required to be physically present for a period or periods totaling not less then ten (10) years, see supra, §1401 (a)(7); (3) citizenship is transmitted by the law in effect at the time of the child's birth, see United States v. Viramontes-Alvarado, 149 F.3d 912, at 915 (9th Cir. 1998); United States v. Gomez-orozco, 188 F.3d 422, at 425-26 (7th Cir. 1999); Ablang v. Reno, 52 F.3d 801, at 803 (9th Cir. 1995); and Scales v. I.N.S.,232 F.3d 1159, at 1162-63 (9th Cir. 2000). See also United States v. Fitzgerald, 89 F.3d 218, at 221 n.1 (5th Cir. 1996)(jurisdictional errors may be raised at any time and are not forfeited by the party's failure to assert a timely objection); United States v. Cabera-Teran, 168 F.3d 141 (5th Cir. 1999)(An indictment's failure to charge an offense constitutes a jurisdictional defect) 168 F.3d, at 143.

To be sufficient an indictment must allege each material element of the offense if it does not, it fails to charge that offense. United States v. Gaytan, 74 F.3d 545, at 552 (5th Cir. 1996). This requirement stems directly from one of the central purposes of an indictment: to ensure that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment.

See e.g. United States v. Wilson, 884 F.2d 174, at 179 (5th Cir. 1989); See also United States v. Angeles-Mascote, 206 F.3d 529, at 532 (5th Cir. 2000)(citing United States v.Chappel, 6 F.3d 1095, 1099 (5th Cir. 1993)(indictment must charge essential elements of the crime to allow preparation of a defense)).

In United States v. Musgrave, 444 F.2d 755 (5th Cir. 1971), the Fifth Circuit observed:

> Just as an indictment which omits an essential element of the crime charged must be dismissed as fatally defective, the trial judge's failure here to instruct the jury on all essential elements of the crime ... even though not requsted was plain error."

Musgrave, 444 F.2d, id. at 764.

Furthermore, during trial proceeding, certain documents and comments were made to the jury and consequently the verdict should be vacated. More specifically, the government introduced into evidence a "translation" of "Government's Exhibit No. 12," see Plt.'s Exh. No. 52, did so with a limiting instruction about the weight to be given to the exhibit, or for purposes for which it should be used. See Plt.'s Exh. No. 53; see also Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698 (1933)(a judge may, "analyze and dissect the evidence , but he may not either distort it or add to it.") 289 U.S., at 470, 53 S.Ct., at 699.

Trial counsel's failure to object to this instructions, was prejudicial, when the use of this document without the proper predicate gave rise to the presumption that Plaintiff could not be a United States Citizen if he had not been born in the United States. Proper counsel would have objected and requested that the jury be instructed in the statutory manner in which a person gains citizenship if she or he was not born in the United States, see §1401 (a)(7); or failure to properly investigate the proper way a person in Plaintiff's "extraordinary circumstances," derives citizenship, or to bring to the Court's or jury's attention the similiarity between the instant case, and Matter of Navarrete (1967), 12 I. & N. Dec. 138, 142.

See also Wiggins v. Smith, (223), 156 L.Ed. 471 (the United States Supreme Court ruled trial counsel constitutionally ineffective for failing to conduct a reasonable adequate pretrial investigation). It is will established that a jury, "should be instructed on a legal theory only if the evidence, (see Plt.'s Exh. No. 51; and §1401 (a)(7) adduced at trial is sufficient to justify an instruction." Foster v. Ford Motor Co., 621 F.2d 715, 717 (5th Cir. 1980)(citing Liner v. J.B. Tally & Co., 618 F.2d 327, 330-31 (5th Cir. 1980); Lyle v. Bentley, 406 F.2d 325, 3'7 (5th Cir. 1969); see also Lyle, 406 F.2d, at 327-28.

Jury deliberations represent a "critical stage of a criminal trial." Bollenbach v. United States, 326 U.S. 607, 612-13, 66 S.Ct. 402 (1946); see also United States v. Rinder, 639 F.2d 931, at 934 (2d Cir. 1981)(citing Bollenbach). The right of the accused to be present during all critical stages of the trial is basic and fundamental. Rushen v. Spain, 464 U.S. 114, 117, 104 S.Ct. 453, 455 (1983).

IN the instant case, the jury while deliberating Plaintiff's status in the United STATES, in reasonable doubt, "inquired" to this Court, as to pertinent and existing law. See Plt.'s Exh. No. 54. A "reasonable doubt" has often been described as one "based on reason which arises from the evidence or lack of evidence." Johnson v. Louisiana, 406 U.S. 356, 360, 92 S.Ct. 1620 (1972)(citing cases). The most fundamental element of due process is real notice of the true nature of the charge against him. Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572 (1941); Hulsey v. United States, (C.A. 5), 369 F.'d 284. The Ninth Circuit in United States v. Handy, 761 F. 2d 1267 (1985), concluded that:

> "a 'substantial question is one that is 'fairly debatable,'" D'Aquino v. United States, 180 F.2d at 272; accord Barefoot v. Estelle, 103 S.Ct., at 3394 n.4, or fairly doubtful," United States v. Miller, 753 f.2d at 23. "In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous." United States v. Giancola, 754 F.2d at 901; accord Barefoot v. Estelle, 103 S.Ct. at 3394; Garden v. Pague, 558, 551 (9th Cir. 1977)

Handy, 761 F.2d, at 1283.

The courts duty to consult with counsel upon receiving questions from a jury was recognized in Gomila v. United States, 146 F.2d 372 (5th Cir. 1944), in which the court answered the jury's question without sharing them with, or consulting with defense attorney's. There, the court held that "[d]efendants were entitled to an opportunity to be heard in connection therewith." Id., at 373. "The proper practice should include these steps: (1) the jury's inquiry should be submitted in writing (see Plt.'s Exh. No. 54 ...) (2) Before the jury is recalled, the note should be marked as a court exhibit and be read into the record in the presence of counsel and the defendant ... (3) Counsel should be afforded an opportunity to suggest appropriate responses. cf. Fed. R. Crim. P. Rule 30, requiring the trial judge to inform counsel of the disposition of proposed requests to charge the summations. (4) After the jury is recalled, the trial judge should generally proceed his response by reading into the record in their presence the content of any note concerning substantial inquiries. (here, the judge, without counsel or Plaintiff present, issued supplamental instructions to the deliberating jury, see Plt.'s Exh. No. 55). THis assures that all jurors appreciate the question to which the response is directed, in the event the note was not discussed among all the jurors (see Plt.'s Exh. No.56) .... Ronder, 639 F.2d, at 934. See also Blue Bird Co. v. Ryder Truck Rental, 583 F.2d 717 (1978).

Although Plaintiff may not have had a constitutional right to be present while his lawyer discussed the note with the judge, he did have a Sixth Amendment right to be represented by his attorney at such conference. See United States v. Frazin, 780 F.2d 1461, at 1469 (9th Cir. 1986)(holding "constitutionally fatal" the absence of both defendants and counsel in formulating judge's response to jury without deciding whether defendants personally must be present at conference). In Larson v. Tansey, 911 F.2d 392 (10th Cir. 1990), it was recognized that even if defense

30.

counsel could waive defendant's right to be present, defense counsel could not do so without first consulting defendant about the waiver and obtaining defendant's consent. Tansey, 911 F.2d, at 396 n.2.

> 4. Whether the court violated Plaintiff's right of presence at a critical stage of the trial proceedings. As set forth by the United States Supreme Court in: Rogers v. United States, 422 U.S. 35, 95 S.Ct. 2091 (1975); Shields v. United States, 273 U.S. 583, 47 S.Ct. 478 (1927); and as required by Federal Rules of Criminal Procedures, Rule 43 (a). Namely, by issuing Ex-Parte supplamental jury instructions to a deliberating jury's inquiry ("substantial question") (in absence of counsel and defendant) as pertinent and existing law. See Plt.'s Exh. No. 54; see also §1401 (a)(7).

The return of supplemental jury instructions is a critical stage of the criminal proceeding. Rushen v. Spain, 464 U.S. at 119 n.4, 104 S.Ct. 453; Rogers v. United States, 422 U.S. 38-40, 95 S.Ct. 2091. The Sixth Circuit also agrees that the giving of a supplemental jury instruction is a critical stage of the criminal proceedings. See French v. Jones, 225 f.2d 658; 2000 WL 1033021, *(6th Cir. July 18, 2000). The court further noted that even the Michigan trial and Appellate Courts appeared to agree that this was a critical stage of the peoceedings. Id., '000 WL 1033021 *3, f.n.5.

A defendant in a criminal case has a fundamental right protected by the Fifth and Sixth Amendments of the United States Constitution, to be present at all formal proceeding related to the charge against him and where the jury id present. See Shields v. United States, 273 U.S. 588-89, 47 S.Ct. 478 (noting the "rule of orderly conduct of a jury trial entitling the defendant, especially in a criminal case, to be present from the time the jury is impaneled until its discharge after rendering the verdict"). It has been recognized that a defendant may waive the constitutional right to be present during trial. See Snyder v. Massachusetts, 291 U.S 97, 106, 54 S.Ct. 330, 332 (1934)("no doubt the privilege [to be present] may be lost by consent ..."). This Court however, should indulge every reasonable presumption against

31.

"waiver of a fundamental constitutional right," such as due process. <u>Illinois v. Allen,</u> 397 U.S. 337, at 343, 90 S.Ct. 1057, 1060-61 (1970).

Under Federal Rules of Criminal Procedures, Rule 43(a), a criminal defendant has a eight to be present during all stages of his trial, which has been held to include the giving supplamental jury instructions or other communications with a deliberating jury. United States ex rel. <u>S.E.C. v. Billingsley,</u> 766 F.2d 1015, at 1019 (7th Cir. 1985)(citing Rogers v. United States, 422 U.S. at '19, 95 S.Ct. at 2094). The seriousness of adopting <u>Rogersv. United States,</u> was seen by the Seventh Circuit's decision in <u>ex rel. Billingsley,</u> where it held that when a district court judge, (as here), faced with such communications from the jury, should either follow the procedures in <u>Rogers,</u> or obtain from the defendant himself a clear and knowing waiver on the record, <u>Billingsley,</u> 766 F.2d at 1020.

In the instant case, without advicing the parties that she had received a note from the deliberating jury (and without securing Plaintiff's or counsel's presence), or consulating with them on a suitable reply, the judge answered the deliberating jury's "inquiry" [substantial question], see Plt.'s Exh. No. <u>54</u>, with a supplemental jury instruction. See Plt.'s Exh. No. <u>55</u>. It is evident that the judge's response to the deliberating jury, was tantamount to directing a verdict of guilty. See <u>Bollenbach,</u> 326 U.S. at 612, 66 S.Ct. at 405,

> "Particularly in a criminal trial, the judge's
> last word is apt to be the decisive word."

This of course left Plaintiff without a leg to stand on, and the jury after requesting more paper to vote, see Plt.'s Exh. No. <u>56</u>, soon thereafter, returned with a verdict of guilty. The existance of the requisite "reasonable possibity" of harm is made the more plausible in this instance by the timing of the breach, the constitutional error occurred at the most critical stage of the trial, in the midst of the jury's deliberations.

The United States Supreme Court has recently reiterated that a "substantial question" is one that is "fairly debatable." In Barefoot v. Estelle, when discussing the level of merit required in a habeas appeal involving the death penalty, the Supreme Court noted that a "substantial showing of the denial of [a] right," 103 S.Ct. at 3394 (quoting Stewart v. Beto, 454 F.2d 268, 270 n.2 (5th Cir. 1971), cert denied, 406 U.S. 925, 92 S.Ct. 1796 (1972), is something more then the absence of frivolity," id.(quoting Blackmun, Allowance of In Forma Pauperis Appeals in §2255 and Habeas Corpus Cases, 43 F.D.R. 343, 352 (8th Cir. 1967)). The Supreme Court continued on to define a "substantial question" as one that poses issues" 'debatable among jurists of reason'." Id., at n.4 (quoting Gorden v. Willis, 516 F.Supp. 911, 913 (N.D. Ga. 1980)(internal citation omitted). See also Plt.'s Exh. No. 19. Where the giving of an instruction has made it possible that the jury may have found against a party on a ground for which there was no evidence, the giving of instruction constitutes reversible error. Kicklighter v. Nails by Jannee Inc., 616 F.2d 734, 740 (5th Cir. 1980). In an opinion by Justice P. Victory, the majority decided that the lower courts gave to narrow a reading to Apprendi v. New Jersey, 530 U.S 466, 120 S.Ct. 2348, and a decision that foreshadowed Apprendi's ruling, Jones v. United States, 526 U.S. 227, 64 Cr.L. 512 (1999). Quoting Apprendi', rationales is the bedrock principle that a state must try to a jury 'all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt.'"

Although the evidence may not have been directly contradicted by conflicting evidence, it is nonetheless settled, in a criminal case, that "[t]he plea of not guilty places every issue in doubt, and not even undisputed fact may be removed from the jury's consideration, either by direction or omission in the charge." United States v. Natale, 526 F.2d 1160, 1167 (2d Cir. 1975). Accord, United States v. Johnson, 718 F.2d 1317, 1322 (5th Cir. 1983). The First Circuit has held

before that [n]o matter how persuasive the government's evidence may seem to the court, there is no burden on a defendant to dispute it. Nor can defendant's failure to offer evidence on [an] issue charge or satisfy the government's burden with respect to it." DeCecco v. United States, 338 F.2d 797, 798 (1st Cir. 1964). Accord, Moore v. United States, 429 U.S. 20, 22, 97 S.Ct. 29, 30 (1976)(per curiam)(prosecutor bears "the burden of proving beyond a reasonable doubt every element of the charged offense").

The court committed reversible error in furnishing a substantial response to the jury's request for factual information. See United States v. Hyson, 721 F.2d 856, 865 (1st Cir. 1983)(approving district judge's refusal to answer a jury's factual question because to do so "would be turning the whole role of the Court and the jury on its head ...").

By telling the jury that Plaintiff's "alienage" had been conclusively established as a matter of record, the court permitted the jury to convict Plaintiff without ever examining the evidence concerning an element of the crime charged. See Connecticut v. Johnson, 460 U.S. 73, 88, 103 S.Ct. 969, 978 (1983). Plaintiff contends that the court's ex parte supplemental instruction to the deliberating jury's inquiry, not only violated his right to be present at a critical stage of the trial proceedings, but also, effected the jury's impartiality, and was misleading. Whatever provative force the government's proof possessed, the jury had the power to accept or reject it -- or to find it insufficiently persuasive. Plaintiff had a correlative right to the free and unhampered exercise by the jury of all its powers. The Court significantly narrowed the latitude which the jury -- and therefore, Plaintiff -- should have had in this respect.

The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument of reducing the risk of convictions resting on factual error. The standard provides concrete substance for the

34

presumption of innocence -- That bedrock "axiomatic and elementary" principle whole enforcement lies at the foundation of the administration of our criminal law." Cf. Coffin v. United States, 156 U.S. 423, supra, at 453, 39 L.Ed. 481, 155 S.Ct. 394 (1895). AS the dissenters in the New York Court of Appeals observed, and the United States Supreme Court agreed,

> "a person accused of a crime ... would be at a severe disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for the same evidence as would suffice in a civil case."

Re Winship, 397 U.S. 358, 106 S.Ct. 3101 (1986)(the government cannot contend that deprication of the right to trial by jury was harmless simply because the evidence established the defendant's guilt), at 478 U.S. at 578, 106 S.Ct. at 3106. Both the due Process Clause and the guarantee of a trial by jury flately preclude a presumption of guilt by instructing the jury to presume a central element of the criminal offense charged in the indictment. Mullaney v. Wilbur, 421 U.S. 648, 95 S.Ct. 1881 (1975); Vlandis v. Kline, 412 U.S. 441, 446, 93 S.Ct. 2230 (1973). Similarly, reliance on an irrbutable presumption is unconstitutional when its effect is to preclude consideration of evidence negating liability in a criminal prosecution. See Heiner v. Donnan, 285 U.S. 312, 329, 76 L.Ed. 772, 52 S.Ct. 385; United States v. Bowen, 414 F.2d 1268, 1273 (3d Cir. 1969). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364.

The Grand Jury Clause provides protection against a manipulative peosecutor (or judge) who would supplant the grand jury by altering the charge to fit the proof, and thereby seek a conviction "on the basis of facts not found by, and perhaps not even presented to, the grand jury, Russell v. United States, 369 U.S. 749, 770 (1962).

Such an alteration, called a "constructive amendment," requires automatic reversal and dismissal, Ex parte Bain, 121 U.S. 1 (1887). Seen from this prospective, the question whether an "element" of the indictment has been changed at trial is to be answered not merely by reference to abstract terms -- in this case, "count one (1): Attempted Illegal Reentry, the crime for which Plaintiff was "Removed for an January 28th, 1998" "Burglary of a Building," see Plt.'s Exh. No. 57, was litigated by the Immigration and Naturalization Service in (1988), and was found Non-Deportable, see Plt.'s Exh. No. 58; while Count two (2): falsely and willfully claiming to be a citizen of the United States, see Plt.'s Exh. No. 6, see also United States v. Weber, (N.D. Ill. 1947), 71 F.Supp. 88 (A false representation as to citizenship is not a crime unless made for fraudulant purpose)" -- but also by reference to the facts, as the grand jury saw them, that gave each count content. Accordingly, a change in characterizing the element from its expression in the indictment to its presentation at trial will be an amendment, not a mere varience, when this Court cannot be sure from the indictment that the grand jury received facts -- material to convict on an element of the crime -- which the petit jury received and could use to convict. The judgment must be reversed because it cannot be said with confidence that the crime of which Plaintiff was convicted is the same as the crime for which he was indicted by the grand jury.

Practically all cases holding that a violation of Rule 43 is reversible error involved situations where it was decided that there was resultant prejudice or a reasonable possibility thereof. The standard by which to determine whether reversible error occurred, however, is not whether the accused was actually prejudiced, but whether there is "any reasonable possibility of prejudice." Walker v. United States, 116 U.S. App. D.C. 221, 223, F.2d 434, 436 (1963), cert. denied, 375 U.S. 976, 84 S.Ct. 494 (1964). See United States v. Crutcher, 405 F.2d 239 (2nd Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018 (1969);

Rice v. United States, 356 F.2d 709 (8th Cir. 1966); United States v. Neal, 320 F.2d 533 (3d Cir. 1963); Evans v. United States, 284 F2d 393 (6th Cir. 1960).

In any event the burden is on the prosecution to show the ex parte communication with the deliberating jury was harmless. United States v. Schor, 418 F.2d at 29, 30. The government must demonstrate "that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'" United States v. Cheek, 94 F.2d 136, 141 (4th Cir. 1996)(quoting Stephans v. South Atl. Canners Inc., 848 F.2d 484, 488-89 (4th Cir. 1988); see also United States v. Carter, 973 F.2d 1509, 1515 (10th Cir. 1992)(quoting United States v. De Hernandez, 745 F.2d 1305, 1310 (10th Cir. 1984)(holding that in order "[t]o avoid a new trial under the plain error analysis, the record must completely 'negivate [] any reasonable possibility of prejudice arising from such error.'").

In the case at hand, the jury began deliberation on March 11th, 1999, was excused for the night, and returned on March 12th, 1999, to continue deliberations. The jury deliberated for about twenty (20) minutes after receiving the ex parte supplemental jury instructions from the court concerning their "inquiry" as to the charge and as to pertinent and existing law. The only other inquiry the jury made during this period was for additional paper to vote. See Plt.'s Exh. No. 56.

In this sense, the facts bear close relationship to the situations which mandated reversal in United States v. Glick, 436 F.2d 491 (2d Cir. 1972)(almost immediate verdict), and in United States v. Ronder, 639 F.2d 931 (2d Cir. 1981)(one (1) half-hour after improper communications). Further, there is likewise strong similarity to the situation requiring reversal by the United States Supreme Court in Rogers v. United States, 422 U.S. at 37, 95 S.Ct. at 2093 (verdict rendered within five (5) minutes after improper communication".

As noted by the Sixth Circuit:

"... the question is, not whether any actual wrong
resulted ... but whether [there was] created a
condition from which prejudice might arise or from
which the general public would suspect that the
jury might be influenced to reach a verdict on the
grounds of bias or prejudice." Stone v. United States,
113 F.2d 70, 77 (6th Cir. 1940)

The decisive factors for consideration are (1) the closeness of the case; (2)
the centrality of the issue affected by the error; Gaitheer v. United States, 413
F.2d 1061 (D.C. Cir. 1969). This Court must insure that not merely a just result
was obtained in a trial, but that the result, whatever it be was reached in a fair
way. See United States v. Narisco, 466 F.Supp. 252 (E.D. Mich. 1977), supra.

On March 12th, 1999, about twenty (20) minutes after receiving the ex parte
communication, the jury presented a verdict of "guilty" to both counts of the
indictment, see Plt.'s Exh. No. 22. Under Federal Constitutional Law, a violation
of the Due Process Clause results when a criminal defendant is convicted of a
crime he was never charged with committing: "No principle of procedural due
process is more clearly established than that notice of the specific charge, and a
chance to be heard in a trial of the issues raised by that charge ... are among
the Constitutional Rights of every accused." Cole v Arkansas, 333 U.S. 196, 201,
68 S.Ct. 514, 517, 92 L.Ed. 644, 647 (1948); Plunkett v. Estelle, 709 F.2d 1004,
1009 (5th Cir. 1983) cert. denied, --- U.S.---, 104 S.Ct. 1000 (1984); Tarpley v.
Estelle, 709 F.2d 157, 160 (5th Cir.) cert. denied, --- U.S. ---, 104 S.Ct. 508
(1983), see Plt.'s Exh. No. 19. Counsels failure to object or to appeal such an
egregious flaw at Plaintiff's trial cannot be considered to be with in the "wide
range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066;
see also United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310
(1995)(concluding that the Due Process Clause and the Sixth Amendment require
criminal convictions to rest upon a jury determination that a defendant is guilty
of every element of the crime beyond a reasonable doubt). "the presumption that
counsel's assistance is essential has before required the United States Supreme

38.

to conclude that a trial is unfair if the accused is denied counsel st a critical stage of the criminal proceeding. See cronic, 466 U.S., supra, at 659, 104 S.Ct. 2039. The return of supplemental jury instructions is a critical stage of the criminal proceeding. Spain, 464 U.S. at 119 n.4, 104 S.Ct. 453; Rogers, 422 U.S. at 38-40, 95 S.Ct. 2091; Curtis v. Duval, 124 F3d 1 at 4 (1st Cir. 1997).

> (5). Whether court appointed appellate counsel
> constructively deny Plaintiff effective assist-
> ance of counsel on appeal as adjudicated by the
> Supreme Court: Strickland v. Washington, 466 U.S.
> 668, '104 S.Ct. 2952 (1984); United States v. Cronic,
> 466 U.S. 648, 104 S.Ct.2039 (1984); Penson v. Ohio,
> 488 U.S. 75, 109 S.Ct. 346 (1988); Smith v. Robbins,
> (2000) 528 U.S. 259, 120 S.Ct. 746.

On December 15th, 1999, attorney's for Plaintiff; Laura Fletcher Leavitt, and Sandre Zamora-Zayas, after having evaluated the sufficiency of the indictment; and having examined the record for any arguable violations of the Constitution, federal statutes, the Federal Rules of Criminal Procedure, the Federal Rules of evidences, and the United States Sentencing Guidelines, concluded that the appeal presented no legally non-frivolous questions, and therefore file an Anders Brief, in accordance with Anders v. California, 386 U.S. 738 (1967), se PLt.'s Exh. No. 10.

In some cases, a Petitioner's claim of ineffective assistance of counsel involve counsel's performance during the course of a legal proceeding, either st trial or on appeal. See Strickland, e.g., at 699, 104 S.Ct. 2052 (claim that counsel made poor strategic choices regarding what to argue at a sentencing hearing); Cronic, 466 U.S. at 649-650, 104 S.Ct. 2039 (claim that young lawyer was incompetent to defend complex case); Penson, 488 U.S. at 88-89, 109 S.Ct.346 (claim that counsel in effect did not represent defendant on appeal); and Smith v. Murray, 477 U.S. 527, 535-536, 106 S.Ct. 2661 (1986)(claim that counsel failed to make a particular argument on appeal).

"The right to the effective assistance of counsel is recognized not for its

own sake, but because of the effect it has on the ability of the accused to receive a fair trail, "Cronic, at 658, 104 S.Ct. 2039, or a fair appeal, see Penson, at 88-89, 109 S.Ct. 346.

In some cases, however, the Petitioner alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was actually or constructively denied the assistance of counsel altogether. The same is true on appeal. See Penson, supra, at 88, 104 S.Ct. 346. Under such circumstances "[n]o specific showing of prejudice [is] required, "the adversary process itself [is] presumptively unreliable." Cronic, at 659, 104 S.Ct. 2039; See also Smith v. Robbins, (2000), 528 U.S. 259, ante, at 286, 120 S.Ct. 746 ("denial of counsel altogether ... warrants a presumption of prejudice"); Penson, supra, at 88-89, 109 S.Ct. 346 (complete denial of counsel on appeal requires a presumption of prejudice.

On the face of the record, Plaintiff's appellate counsel failed to satisfy **An-ders v. California**, by refusing to investigate      [Plt.'s Exh. No.(s)  51 (one al-en parent, and one citizen parent, as it relates to § 1401(a)(7); Exh. No.  57, as it relates to double jeopardy; and **Matter of Navarrete**, as it relates to the "extr-aordinary circumstances" at deriving his citizenship; or 8 U.S.C. § 1408(4)(A)(B), as Plaintiff's father's status of "national" at birth, pursuant to Section  201(e) of the 1940 Act, passed to Plaintiff the status of "national but not citizen     of the U.S. at birth"], or  to identify any of the aforesaid "appealable issues." See **supra dictus**, Plt.'s Exh. No.  10. (emphasis added). These errors rendered appella-te counsel's performance constitutionally deficient under the Sixth Amendment. See **Strickland**, at 687-91, 104 S.Ct. 2052. The absence of any meaningful legal assista-nce in the instant case makes a mockery of the representation of indigent     defend-ants contemplated by the U.S. Supreme Courtin: **Anders**; **Penson**; and **Gideon v. Wainr-ight**, 372 U.S. 335, 83 S.Ct. 792 (1963).

**40**

**CONCLUSION.**

Plaintiff contends that his otherwise claim of U.S. citizenship, has not been properly presented by trial counsel; appellate counsel; and Habeas Corpus counsel. and when it came before this Court [presented by aforesaid counsels'], the claim was not properly investigated. See **Wiggins v. Smith**, 539 U.S. –, 123 S.Ct. – (2003)(finding trial counsel constitutionally ineffective for failing to conduct a reasonable adequate pretrial investigation). As Justice Southerland wrote in **Powell v. Alabama**, 287 U.S. 45, 53 S.Ct. 55 (1932)("[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law."). **Id.**, at 69, 53 S.Ct. 55.

### "PRAYER"

Plaintiff proceeding pro se, prays that the Honorable Judge grant Plaintiff's motion to vacate the judgment pursuant to **Fed.R.Civ.P.**, Rule 60(b); **Fed.R.Civ.P., Rule(s); 15(a); and 15(c)(2).**

Respectfully presented, this third day of December, 2002.

RESPECTFULLY: *Raymundo Gonzalez-Garibay*
Pro Se Plaintiff

RAYMUNDO GONZALEZ-GARIBAY
REGISTER NUMBER: 82756-079
U.S.P.-BEAUMONT
P.O. BOX 26030
BEAUMONT, TEXAS 77720-6030

41